UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NICOLE L. GLEN, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:08-cv-00730-RWS |
| | ) | |
| FAIRWAY INDEP. MORTGAGE CORP., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF PARTIES' JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs, Nicole L. Glen and Alexander C. Glen individually, and on behalf of the certified Class and Defendant Fairway Independent Mortgage Corporation ("Fairway"), move the Court for an order granting final approval of the proposed settlement preliminarily approved by the Court on January 21, 2011.

The parties seek to fully and finally resolve the action according to the terms and conditions set forth in the parties' Settlement Agreement and Release, previously submitted to the Court. (Docket. No. 113-1).

The parties have agreed to this proposed settlement to avoid the expense and unpredictability of further litigation.  The settlement has come only after three years of litigation. The settlement provides substantial benefits to Class Members, is fair, reasonable and adequate and should be approved as final.

I.    **THE LITIGATION**

The Glens initiated this litigation in the Circuit Court of St. Charles County, Missouri, on October 1, 2007, asserting various individual claims related to a first and second mortgage they obtained from Fairway in January 2006.   During the pendency of the action in State Court, Plaintiffs submitted various Interrogatories and Request for Production to Fairway.   In addition, Plaintiffs deposed Anthony Houston, a Fairway employee directly involved with the Glens' loan transactions.

In March of 2008, the Glens filed an Amended Petition and asserted class claims pertaining to Fairway's alleged failure to adequately disclose yield spread premiums it received from funding lenders on good-faith estimates.   On March 1, 2008, the Glens were granted leave to file their First Amended Petition which asserted class claims. On May 20, 2008, the action was removed to the United States District Court for the Eastern District of Missouri.

Immediately following removal of the case to this Court, the parties engaged in an extensive motion practice, including motions to dismiss, motions to remand and motions to compel discovery.   The Glens filed various amended complaints. Multiple depositions were taken, including of witnesses in Texas and Ohio.

On May 28, 2009, this Court granted the Glens' Motion for Leave to File their Fourth Amended Complaint.   Their Fourth Amended Complaint asserted a class claim against Fairway under the Missouri Merchandising Act, R.S.Mo. §407.010 *et seq*.  As set forth in Count III of the Glens' Fourth Amended Complaint, the Glens

alleged that Fairway promised its customers in loan-origination agreements that it would reveal in good-faith estimates "additional compensation" it received from the lender.  The Glens asserted that Fairway broke that promise to the Glens and hundreds of others.

On May 29, 2009, the Glens filed their Motion for Class Certification.  The Motion was extensively briefed by the parties. The parties submitted substantial evidentiary material in support of their respective positions.  A hearing on Plaintiffs' Motion for Class Certification was conducted December 17, 2009. Documentary evidence, as well as testimony of witnesses was submitted.  Following the hearing, the parties submitted additional briefing on matters pertaining to class certification.

On February 22, 2010, the Court issued its order sustaining Plaintiffs' motion for class certification. (Docket No. 87). The Court ordered the Glens to file an amended class definition complying with the Court's memorandum and order.

Following class certification proceedings, pursuant to Rule 23(f), Fairway appealed the certification order to the United States Court of Appeals for the Eighth Circuit. (Appeal No. 10-8008).  The appeal was denied March 30, 2010.  *See Glen v. Fairway Independent Mortgage Corporation,* 265 F.R.D. 476 (E.D. Mo. 2010).

During the course of this litigation, Fairway produced thousands of documents pertaining to Class Members mortgage transactions.  Furthermore, counsel for the Glens subpoenaed thousands of documents from various third

3

parties, including, GMAC Mortgage, First Horizon Mortgage, Wells Fargo, Bank of America, and Trust Bank and ABN AMRO Mortgage Group.  The information obtained from these documents was utilized by counsel from Plaintiffs to create spreadsheets of information.  The information was analyzed by plaintiffs' expert economist for the purpose of calculating damages.

Fairway has denied and continues to deny all material allegations of the Fourth Amended Complaint and denies any and all liability or wrong doing in connection with the conduct described in the Fourth Amended Complaint.  Fairway has asserted and continues to assert that its alleged conduct with respect to the disclosure of the yield spread premiums on good-faith estimates was in all respects and at all times, proper and lawful.

## II.    The Process of Reaching a Settlement.

On November 24, 2010, the parties participated in a lengthy mediation conducted by Attorney Richard P. Sher.  In addition to counsel for the parties, also in attendance were the named plaintiffs and three representatives of Fairway, including its President, CEO and General Counsel.

Following vigorous and lengthy negotiations, the parties reached a settlement as memorialized in the parties' Settlement Agreement and Release. This case readily meets the standard for final approval required by Rule 23(e)(1)C) as it is fair, reasonable and adequate.  Fed. R. Civ. P. 23(e)(1)C); *See* Manual For Complex Litigation §21.62 at P.485 ff (4th Ed. 2004) (setting forth standard for

4

settlement approval).

## III.    Terms of the Settlement.

The Court previously considered the terms of the settlement in granting preliminary approval. Fairway has agreed to pay up to $1,025,000, inclusive of attorneys' fees and costs, in settlement of the class claims. The following is a summary of the settlement:

### A.    Relief to the Class.

The settlement agreement provides that a total of $658,323 is to be distributed to some 825 class members.[1]

Class members are divided into two categories, (1) those who obtained a home purchase loan through Fairway and (2) those who obtained a loan through Fairway for the refinance of an existing loan. Those in the first category are to be paid at a 2:1 ratio to those in the second category. This apportionment recognizes that those class members whose mortgage transactions involved a refinancing of an existing loan rather than a home purchase had a right to rescind their transaction within three days of closing as provided by the Truth in Lending Act, 15 U.S.C. §16419(c). Thus, Fairway had a defense as to causation available to it with respect to those class members who participated in a refinance transaction which was not available with regard to those class members who obtained a home purchase loan.

---

[1] There is evidence that there are more than 825 customers of Fairway that fall within the class definition. However, Fairway does not have records reflecting identifying information of those persons. A notice published February 4, 2011, in the St. Louis Post-Dispatch did not generate additional identification of class members.

Class members who obtained a home purchase loan from Fairway will receive 54% of the yield spread premium received by Fairway. Those 376 class members will be paid an average of $1,155.00. The 449 class members who refinanced an existing loan through Fairway will receive 27% of the yield spread premium charged in their transaction, or an average payment of $498.66.

### B.    Attorneys' Fees and Expenses.

Subject to the Court's approval, class counsel will receive 33% of the $1,025,000 for attorneys' fees, or $341,677, and be reimbursed for up to $25,000 in costs. Class counsel has submitted a separate application for an award of attorneys' fees and costs.

### C.    Release of Fairway.

As more fully detailed in the settlement agreement, Fairway is to be released of all claims arising from or relating to disclosures provided on good faith estimates by Fairway.

## IV.   Notice to the Class; Objections and Opt-Outs.

In its preliminary-approval order, the Court ordered that notice to the class be mailed on or before February 11, 2011. The class notice was mailed by Epsilon Production Services on February 11, 2011 to the members of the class. Further, the class notice was published in the St. Louis Post-Dispatch on February 4, 2011.

The deadline for objections and opt-outs was May 2, 2011. Counsel for the class has received one opt-out. No objection to the proposed settlement has been made.

## V.      Administration of the Settlement.

As provided in the settlement agreement, within twenty-one (21) days of final approval of the settlement, Fairway shall draft a check for each class member in the appropriate settlement amount and provide the checks to Class counsel. Class Counsel, through Epsilon Production Services, will promptly send the checks to class members with an explanation of the settlement terms. The checks will expire sixty (60) days following issue.

## VI.    The Court Should Grant Final Approval to the Settlement.

To finally approve the settlement, the Court must be satisfied that the requirements of Rule 23(e) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997). The Court should grant final approval to the settlement because it meets these requirements.

### A.      The Settlement Meets the Rule 23(e) Criteria.

Before approving the settlement, the Court must determine whether the settlement is fair, reasonable, and adequate, as required by Rule 23(e). Courts consider six primary factors in making this determination: (1) the strength of the plaintiff's case on the merits measured against the terms of the settlement; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement among class members; (4) the presence of collusion in gaining a settlement; (5) the state of the proceedings; and (6) the amount of discovery completed. *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th

7

Cir. 1997) (citations omitted); *see In re Wireless Telephone Federal Cost Recovery Litig.,* 396 F.3d 922, 932-33 (8th Cir. 2005).

This settlement satisfies all these criteria. While plaintiffs believe that their Merchandising Practices Act claim was well founded, the issues of class proof of causation, as previously mentioned, and damages, were factors considered in settlement. While the Glens and their retained expert economist asserted that Class members suffered damage as of the closing date of their loan transactions, Fairway asserted that Class members, if they suffered any damage, incurred such damage over the term of their loan and could not therefore readily prove damages on a class-wide basis at trial.

Also considered in settlement is that Fairway, while an ongoing business concern, is not a national, publicly traded company with substantial resources. The mortgage industry has suffered significant losses in recent years. Fairway closed its Missouri office. If plaintiffs were to prevail at trial and succeed on appeal, there is no assurance that a large judgment could be satisfied. Further, if an appeal were taken from a judgment in favor of the class, the recovery, if any, would be substantially delayed.

There is no opposition to the settlement among class members. No objections to the settlement were made. Only a single opt-out was filed. Unlike many class settlements, class members will be receiving significant cash distributions and do not have to send in a claim form to enjoy the benefits of the settlement. The amount

8

of individual distributions exceed those typically paid in the settlement of a consumer class action.

The settlement agreement was not the result of collusion, but of a lengthy adversarial proceeding between the parties, including an arms-length and vigorous mediation. The case was well-matured and discovery was largely complete, reflecting that this was not a quick settlement reached without a complete inquiry into the strengths and weakness of the case.

## VI.   Conclusion

In sum, given the strengths and weaknesses of the case, an excellent result was achieved for Class members. The settlement is fair, reasonable, and adequate, and should properly be approved as final.

BUTSCH SIMERI FIELDS LLC

/s/ David T. Butsch
David T. Butsch, #2760
James J. Simeri, #102201
231 S. Bemiston, Ste. 260
Clayton, MO 63105-2015
314.863.5700 (telephone)
314.863.5711 (fax)
butsch@stlouislaw.com
simeri@stlouislaw.com

Attorneys for Plaintiffs and the Plaintiff Class

## Certificate of Service

I certify that on May 9, 2011 this paper was filed electronically and served with the Clerk of the Court to be served by operation of the Court's electronic-filing system on all counsel of record:

| Party | Counsel |
|---|---|
| Defendant Fairway Indep. Mortgage Corp. | David D. Crane<br>GALLOP, JOHNSON & NEUMAN, L.C.<br>101 S. Hanley Rd., Suite 1700<br>St. Louis, MO 63105-3441<br><br>D. Barclay Edmundson<br>BARCLAY EDMUNDSON & ASSOCIATES<br>316 Redwood Dr.<br>Pasadena, CA  9110 |

/s/  David T. Butsch